**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| **OCCAM EDGE TECHNOLOGIES, LLC,**<br>    **Plaintiff,**<br><br>    **v.**<br><br>**SHARKDREAMS, INC.**<br><br>    **Serve: Registered Agent**<br>        **Dharma Nukarapu**<br>        **600 Park Offices Dr. Suite 300,**<br>        **Durham, North Carolina 27709**<br><br>    **and**<br><br>**DHARMA NUKARAPU,**<br><br>    **Serve: 600 Park Offices Dr. Suite 300,**<br>        **Durham, North Carolina 27709**<br><br>    **Defendants.** | **Case No.** |

## COMPLAINT

Plaintiff Occam Edge Technologies, LLC ("Plaintiff" or "OET"), by and through undersigned counsel, brings this Complaint against SharkDreams, Inc. ("SharkDreams") and Dharma Nukarapu ("Mr. Nukarapu") (collectively "Defendants"). In support thereof, Plaintiff states as follows:

## PARTIES

1. Plaintiff, Occam Edge Technologies, LLC is a limited liability company organized under the laws of Delaware with a principal place of business located in Fairfax County, Virginia.

1

2. Defendant, SharkDreams, Inc. is a corporation organized under the laws of North Carolina with a principal place of business located in Durham, North Carolina.

3. Mr. Nukarapu is an individual and resident of the state of North Carolina. Mr. Nukarapu is the co-founder, CEO and majority shareholder of SharkDreams.

**JURISDICTION**

4. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332, as complete diversity of citizenship exists between Plaintiff and the Defendants, and the amount in controversy exceeds $75,000.

5. The Venue and division are appropriate pursuant to 28 U.S.C. § 1391 as Defendants have significant and deliberate contacts with this District and division and because it is where the substantial majority of the events giving rise to these claims occurred.

**FACTS**

6. OET technology solutions integrator that helps customers align strategy, technology and mission. They provide IT services/consulting services focusing on application modernization, infrastructure, and security.

7. SharkDreams holds itself out as a healthcare software development firm.

8. On April 17, 2023, OET entered into a Sub-Contracting Agreement (the "Agreement") with SharkDreams, a copy of which is attached hereto as *Exhibit A*.

9. The CEO, Brad Center ("Mr. Center"), signed the Agreement on behalf of OET, and Vikrant Manne signed on behalf of SharkDreams as "Directory of Software". See *Exhibit A*.

10. Under Section 1 of the Agreement, OET was to "perform consulting services relating to business processes and technology and provide services reasonably requested by SharkDreams." See *Exhibit A*.

11. Section 2 of the Agreement outlined SharkDreams obligation to pay OET in the following manner:

> **Payments.** In consideration for performance of the Services by Contractor, Company shall pay Contractor the fees that would be specified in a written agreement of work done, and approved by both management. Specifically, the Contractor shall provide the Company a monthly invoice for the services performed in accordance with the SOW. The Company shall pay the Contractor a set monthly fixed fee as will be outlined in a separate mutually agreed upon payment term sheet. The Company shall pay each undisputed invoice within thirty (30) days after receiving the invoice.
>
> See *Exhibit A.*

12. Since April 17, 2023, OET has fully performed its obligations under the Agreement.

13. In accordance with Section 2 of the Agreement, OET has provided monthly invoices to SharkDreams fully outlining the services performed by OET for the months of April, May, June, and July. Invoices are attached herein as *Exhibit B*. Additionally, OET provided Defendants with separate invoices outlining the costs for software and hardware used for the SharkDreams' project from April 2023 to August 4, 2023. The total cost for software was $1,171.31, and the total cost for hardware was $19,202.02.

14. Even though OET has performed its obligations under the Agreement, SharkDreams has failed to make a single payment to OET for the work performed.

15. OET has made repeated attempts to collect on these invoices, but it has been met with empty promises of payment and excuses by Defendants as to why payments have not been made. Based on the course of conduct of the Defendants, and upon information and

belief, the Defendants never intended to pay OET for the work performed and services provided.

16. On June 30, 2023, the CEO for OET, Mr. Center texted Mr. Nukarapu to inquire about the outstanding invoice payments for April and May. In response to Mr. Center's inquiry, Mr. Nukarapu responded stating: "Hi Brad, last I heard was that [payment to OET] is third to execute…..If it doesn't happen today then it will be the other week….please let me know." Text message is hereto attached as *Exhibit C.* No payment was ever made to OET.

17. On July 5, 2023, in response to another one of Mr. Center's inquiries about outstanding payments, Mr. Nukarapu texted Mr. Center stating: "Hi Brad, looks like it will take another 2 weeks ..(this week no operation, next week operations.)" Text message is hereto attached as *Exhibit D.* No payment was ever made to OET.

18. In response to Mr. Nukarapu's reassurance that payment would be coming in two weeks, OET reached out to its bank to see if it could extend its line of credit so that it could continue funding this consulting project with SharkDreams.

19. On July 19, 2023, in response to another one of Mr. Center's inquiries about outstanding payments, Mr. Nukarapu texted Mr. Center stating: "Brad, will shortly post the extract deposit (in you're a/c)." Text message is hereto attached as *Exhibit E.*

20. Following up on this empty promise, on July 20, 2023, Mr. Nukarapu texted Mr. Center stating: "Hi Brad, I have asked accounts to share the deposit confirmation. True usually it takes 3 to 5 days to reflect. I will update once I get a confirmation." Mr. Nukarapu's text suggested to OET that Defendants had already made the deposit, and they were just

waiting on a deposit confirmation from their bank to share with OET. Text message is hereto attached as *Exhibit F.* This deposit was never made to OET.

21. On August 2, 2023, Mr. Center emailed Mr. Nukaupu a summary of each outstanding invoice. Email is attached hereto at *Exhibit G.* In his email, Mr. Center explained that while OET had continued to work in good faith on their project with OET, OET had already extended its line of credit to fund the project and did not have unlimited resources to continue funding the project without payment from SharkDreams. Mr. Center stated that OET would need to stop all work on the project effective August 4, 2023, but he explained that OET would be ready to resume the project as soon as SharkDream could make a payment on the outstanding invoices.

22. After OET stopped ceased work, Mr. Nukarapu continued to reassure Mr. Center that Defendants would be making payments to OET.

23. On August 23, 2023, Mr. Nukarapu texted Mr. Center "FYI-No sign of return yet. Will initiate once I see the return. + remaining amount (for other invoices) will hit our banks on Tuesday and will immediately be transferred to you." Text message is hereto attached as *Exhibit H*. No payment was ever transferred to OET.

24. These text messages are just a few of the many texts that Mr. Nukarapu sent to Mr. Center reassuring Mr. Center and OET that the payments would be paid shortly. Each text message was made knowingly and falsely and with an intent to defraud OET.

25. Additionally, as more than thirty (30) days have passed since the dates that Defendants received the invoices for April, May, June, July and part of August, Defendants are in violation of the Agreement and have an outstanding balance owed to OET in the amount of $449,394.00.

26. As a result of Defendants' failure to pay the invoices and Mr. Nukarapu's constant
    reassurance that the payments would be paid, OET continued to provide its services to
    Defendants until August 4, 2023, and incurred additional costs on Defendants' behalf.
    OET then incurred otherwise unnecessary financing charges by drawing on its line of
    credit and has faced pressure from its vendors and creditors for payments. Additionally,
    OET has now been forced to issue a stop-work order on all SharkDreams' projects
    causing OET's employees to have no work and thus go unpaid.

27. Finally, OET passed up other business opportunities for other projects as it believed it
    would not have the capacity to take on additional projects while continuing services for
    Defendants.

### COUNT I
### PIERCING THE CORPORATE VEIL
### (Mr. Nukarapu)

28. Plaintiff hereby incorporates the allegations of paragraphs 1 through 26 as if fully stated
    herein.

29. Mr. Nukarapu is the CEO, registered agent, and majority shareholder of SharkDreams.

30. Mr. Nukarapu has completely disregarded all of the statutory provisions set forth in
    Virginia § 13.1 governing the formation, management and operation of his corporation,
    SharkDreams.

31. Instead, Mr. Nukarapu has used SharkDreams as a sham corporation to evade personal
    obligations and to perpetrate fraud.

32. Upon information and belief, Mr. Nukarapu used SharkDreams to defraud several
    investors by making material misrepresentations about SharkDreams' value and projected
    future revenue to solicit investments that could never generate any return. *See Securities*

*and Exchange Commission v. Nukarapu, et al.*; Case No. 5:230-cv-503. SEC Complaint is attached herein at *Exhibit I.*

33. Upon information and belief, Mr. Nukarapu has commingled funds from SharkDreams' investors by instructing certain SharkDreams' investors to send funds to Mr. Nukarapu's personal bank accounts. *See Id.*

34. Additionally, upon information and belief, Mr. Nukarapu continued to incur expenses on behalf of SharkDreams and solicit investments while SharkDreams has had no revenue producing customer orders or contracts and has been receiving little to no cash revenue. *See Id.* Even though SharkDreams continued to have little to no cash revenue, Mr. Nukarapu continued to give SharkDreams' investors a false sense of security on their investments.

35. Unfortunately for OET, one set of expenses that Mr. Nukarapu allowed SharkDreams to incur while receiving little to no cash revenue were for the consulting services performed by OET.

36. As Mr. Nukarapu has 1) used the corporate shield to evade personal obligations and perpetrate fraud, 2) has disregarded statutory provisions set forth in Virginia § 13.1, and 3) has commingled his personal funds with SharkDreams funds, the separate personalities of Mr. Nukarapu and SharkDreams no longer exist and adhering to that separateness would work an injustice.

37. As such, OET is entitled to pierce the corporate veil as to Mr. Nukarapu and hold him personally liable for debts owed and damages caused by SharkDreams to OET.

WHEREFORE, the Plaintiff prays that this Court pierce the corporate veil as to Mr. Nukarpu, and enter judgment against him personally in favor of Plaintiff for damages alleged in the foregoing Counts.

**COUNT II**
**BREACH OF CONTRACT**
**(All Defendants)**

38. Plaintiff hereby incorporates the allegations of paragraphs 1 through 35 as if fully stated herein.

39. Defendant and Plaintiff entered into a legally binding and enforceable Agreement, wherein Plaintiff agreed to perform consulting services for the Defendants in exchange for payment.

40. Plaintiff performed under the Agreement and rendered services to Defendants pursuant to the Agreement.

41. Defendants breached the Agreement by failing to timely pay any of the invoices provided to Defendants pursuant to the Agreement.

42. Defendants' breach of the Agreement caused the Plaintiff monetary damages in the amount of $674,676.33.

WHEREFORE, the Plaintiff prays that this Court award judgment against Defendants, jointly and severally, in an amount of $674,676.33 in compensatory damages, consequential and incidental damages, pre-judgment interest and post judgment interest, reasonable attorneys' fees and costs, and for such other relief as this Court may deem just appropriate.

**COUNT III**
**UNJUST ENRICHMENT**
**(All Defendants)**

43. Plaintiff hereby incorporates the allegations of paragraphs 1-7, 16- 26, and 27-36 as if fully stated herein.

44. Plaintiff's claim for Unjust Enrichment as stated herein is pled in the alternative to the Breach of Contract claim plead in Count II of this Amended Complaint.

45. From April 2023 to August 2023, OET provided consulting services for Defendants.

46. Defendants never compensated OET for these consulting services.

47. OET conferred a benefit on Defendants in the form of consulting services valued at the amount of $674,676.33.

48. Defendants knew of and accepted this benefit conferred to them by OET.

49. To this date, Defendants have retained the benefit to the consulting services conferred on them by OET without paying or otherwise reimbursing OET for the value conferred.

50. The Defendants have been unjustly enriched by the benefits OET conferred on them, and as a direct result of Defendants' failure to make payment or reimburse OET for the consulting services, OET has been damaged in the amount of $674,676.33.

WHEREFORE, the Plaintiff prays that this Court award judgment against Defendants, jointly and severally, in an amount of $674,676.33 in compensatory damages, consequential and incidental damages, pre-judgment interest and post judgment interest, reasonable attorneys' fees and costs, and for such other relief as this Court may deem just appropriate.

### COUNT IV
### FRAUD
### (All Defendants)

51. Plaintiff hereby incorporates the allegations of paragraphs 1 through 46 as if fully stated herein.

52. Upon information and belief, Defendants never had any intention of repaying OET for its services rendered and that Defendants intended to mislead OET.

53. Defendants continuously made false misrepresentations to OET stating that Defendants would make and/or already did make payments towards the invoices.

54. Defendants made these false misrepresentations intentionally and knowingly with the intent to mislead OET so that OET would continue to perform services under the Agreement.

55. OET relied on Defendants' misrepresentations and continued to perform services for Defendants until August 4, 2023 based on the understanding that Defendants would be paying the outstanding balance on the invoices within a week or two of each misrepresentation. In continuing to perform services to Defendants, OET incurred additional costs and passed up on other business opportunities due to lack of capacity.

56. Additionally, in relying on Defendants false representations, OET incurred otherwise unnecessary charges by drawing on its line of credit. This caused OET to face pressure from its vendors and creditors for payments.

57. Under *Prospect Development Company v. Bershader,* 258 Va. 75, 515 S.E.2d 291 (Va. 1999), Plaintiff is entitled to recover his reasonable attorney's fees and costs incident to any recovery for fraud.

WHEREFORE, Plaintiff prays that this Court award judgment against Defendants, jointly and severally, in an amount of $241,000 in compensatory damages, $350,000 in punitive damages, plus reasonable attorneys' fees and costs, pre and post judgment interest, and consequential and incidental damages, and any other further relief this Court deems just and appropriate.

## DEMAND FOR JURY TRIAL

In accordance with Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a jury trial of all issues in this action.

Respectfully Submitted,


Occam Edge Technologies, LLC
By Counsel

*Heba Carter*
_____
Heba K. Carter, Esq. (VA Bar# 87564)
General Counsel, P.C.
6849 Old Dominion Drive, Suite 220
McLean, VA 22101
Tel: (703)556-0411
hcarter@gcpc.com
*Counsel for Plaintiff*